## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

CAPITAL SECURITY SYSTEMS, INC.,

        **Plaintiff,**

        v.                             **Civil Action No. 2:14cv265**

ABNB FEDERAL CREDIT UNION

        **Defendant;**

CAPITAL SECURITY SYSTEMS, INC.,

        **Plaintiff,**

        v.                             **Civil Action No. 2:14cv166**

CAPITAL ONE, N.A. d/b/a CAPITAL ONE BANK,

        **Defendant.**

### OPINION AND ORDER

This matter is before the Court on nearly identical Motions to Stay or in the Alternative, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) filed in Case No. 2:14cv265 ("Case 1") by Defendant ABNB Federal Credit Union ("ABNB") and in Case No. 2:14cv166 ("Case 2") by Defendant Capital One, N.A. ("Capital One").[1] See Case 1, Doc. 32; Case 2, Doc. 32. After considering the instant Motions, along with their supporting and opposing memoranda, the Court **DENIES** Defendants' Motions to Stay and **GRANTS** Defendants' Motions to Transfer to the Northern District of Georgia for the following reasons.

---

[1] For ease of reference, citations to documents from 2:14cv265 will be styled as "Case 1, Doc. # at #," while citations to documents from 2:14cv166 will be styled as "Case 2, Doc. # at #." The case against ABNB is considered Case 1 because, although it was initially brought before the Richmond Division, it was filed first.

## I.   BACKGROUND & PROCEDURAL HISTORY

These cases (collectively the "Virginia Actions") are based upon a theory of patent infringement.  Plaintiff in both cases, Capital Security Systems, Inc. ("Plaintiff"), holds four patents ("Patents-in-Suit"), each entitled "Automated Document Cashing System." Case 1, Doc. 33 at 2.  The systems protected by these patents allow for the deposit of checks and cash into an automated teller machine ("ATM") without the use of an envelope.  Id.  Plaintiff accuses both Defendants of employing "no-envelope ATMs" that infringe the Patents-in-Suit.  Id.; Case 2, Doc. 33 at 3.  A parallel case, brought against the manufacturer of the accused ATMs ("NCR") is ongoing in the Northern District of Georgia.  Capital Sec. Sys., Inc. v. NCR Corp et al., No. 1:14cv1516 (N.D. Ga.).

### A.   Case 1 Procedural History

Plaintiff filed its Complaint against ABNB on March 21, 2014 in the Richmond Division. Case 1, Doc. 1.  Plaintiff then filed an Amended Complaint on April 9, 2014. Case 1, Doc. 11. ABNB filed a timely Answer and Counterclaim on May 19, 2014.  Case 1, Doc. 20.

On May 28, 2014, ABNB filed a Notice of Filing of a Related Case, informing that court of the action involving Capital One in Norfolk.  Case 1, Doc. 22.  Upon careful consideration, it was decided that the two cases should be handled together in Norfolk, and Case 1 was transferred to this Court on June 4, 2014.  Case 1, Doc. 34.

On June 3, 2014, ABNB filed its motion seeking a stay of action or transfer to Georgia. Case 1, Doc. 32.  Plaintiff filed its Answer to the Counterclaim on June 9, 2014, Case 1, Doc. 35, and its Opposition to the motion to stay or transfer on June 17, 2014, Case 1, Doc. 37.  ABNB's Reply was timely filed on June 23, 2014.  Case 1, Doc. 38.  A Corrected Reply was then filed on June 24, 2014.  Case 1, Doc. 40.

**B.     Case 2 Procedural History**

Plaintiff filed its Complaint against Capital One on April 23, 2014 in the Norfolk Division. Case 2, Doc. 1. Capital One filed a Motion to Transfer the case to the Richmond Division on May 23, 2014, on the grounds that Plaintiff had filed a similarly situated case there and that judicial economy would be served by a transfer. Case 2, Doc. 16. That same day, Capital One filed its Answer before this Court. Case 2, Doc. 18. Case 1 was then transferred to the Norfolk Division on June 4, 2014. Case 1, Doc. 34. Subsequently, this Court denied Capital One's Motion to Transfer to Richmond as moot. Case 2, Doc. 37.

On June 6, 2014, Capital One filed its request for a stay of action or transfer to Georgia. Case 2, Doc. 32. Plaintiff's Opposition was filed on June 19, 2014, Case 2, Doc. 34, and on June 26, 2014 Capital One filed its Reply. Case 2, Doc. 35.

## II.     LEGAL STANDARDS

**A.     Inherent Judicial Authority to Stay an Action**

"District courts have the discretion to grant or deny motions to stay entry of judgments." Steel Erectors, Inc. v. J.A. Jones Const. Co., 865 F.2d 255, at *2 (4th Cir. 1988). This discretion "is incidental to the power inherent in every court to control . . . its docket with economy of time and effort for itself, for counsel, and for the litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The appropriate use of such discretion "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." Steel Erectors, Inc., 865 F.2d at *2 (quoting Williford v. Armstrong World Indus., 715 F.2d 124, 127 (4th Cir.1983)) (internal quotation marks omitted).

"The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford, 715 F.2d at

3

127. Specifically, a district court should consider three factors, consisting of: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and] (3) potential prejudice to the non-moving party." Sehler v. Prospect Mortg., LLC, No. 1:13cv473, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013) (quoting Johnson v. DePuy Orthopaedics, Inc., No. 3:12cv2274, 2012 WL 4538642, at *2 (D.S.C. 2012)). Some other important factors to consider are the "interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, [and] bad faith." Avalonbay Communities, Inc. v. San Jose Water Conservation Corp., No. 1:07cv306, 2007 WL 2481291, at *2 (E.D. Va. Aug. 27, 2007) (citing Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1202–1204 (Fed. Cir. 1987); In re Phillips, Beckwith & Hall, 896 F. Supp. 553, 558 (E.D.Va. 1995)).

## B.      The "Customer Suit Exception"

The first-filed rule applies even if the parties to the related actions are not identical. See, e.g., Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp., No. 13cv6561, 2014 WL 1221338 at *2–4 (E.D.N.Y. Mar. 24, 2014). Although the first-filed rule generally suggests that an earlier filed case predominates over a later one, see Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974), the "customer suit exception" provides that "when 'litigation is against or brought by the manufacturer of [allegedly] infringing goods, it takes precedence over a suit by the patent owner against customers of the manufacturer.'" Pragmatus Telecom, LLC v. Advanced Store Co., No. 12-088, 2012 WL 2803695, at *3 (D. Del. July 10, 2012) (quoting Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990)).

In evaluating the potential application of the customer suit exception "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." Katz, 909 F.2d at 1463. The Federal Circuit has clarified however, that

4

"the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay [or transfer] of the customer suits." Spread Spectrum Screening LLC v. Eastman Kodak Co., 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing Katz, 909 F.2d at 1464). Overall, however, similarly to the general analysis of a motion to stay or transfer, "the guiding principles" as to whether to apply "the customer suit exception . . . are efficiency and judicial economy." Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys., 458 F.3d 1335, 1343 (Fed. Cir. 2006).

## C.   Transfer of Venue Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision whether to transfer an action under the statute is committed to the sound discretion of the district court." One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824, 828 (E.D. Va. 2004). In the process of exercising that discretion, however, the district court must balance many factors, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F.Supp. 2d 493, 498 (E.D. Va. 2000). Additionally, a plaintiff's initial choice of forum is generally considered among the "principal factors." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 633 (E.D. Va. 2003). To overcome plaintiff's choice, the party requesting transfer bears the burden of demonstrating that the balance of the other factors "is *strongly* in favor of the forum to which transfer is sought." Medicenters of Am., Inc. v. T & V Realty & Equip. Corp., 371 F.Supp. 1180, 1184 (E.D. Va. 1974).

## III.   DISCUSSION

Both of the cases before this Court were filed prior to the commencement of the case against NCR in Georgia. See Case 1, Doc. 25. Therefore, under the first-filed rule, the Virginia Actions would generally be predominant. This Court however, **FINDS** that the customer suit exception should be applied to the facts of these cases, and as a result, that the Georgia Action is the predominant action. See Katz, 909 F.2d at 1463–64.

Plaintiff first argues against application of the customer suit exception based on the "numerous" claims that it alleges "will not be resolved through [the Georgia Action]." Case 1, Doc. 37 at 1. These "unique" aspects include the alleged use of third party software, a willfulness claim against ABNB, differences in damage calculations, and method-patent infringement claims. See id. at 7–15. Secondly, Plaintiff contends that the exception should not be applied because Defendants are not merely customers "who bought ATMs from NCR, plugged them in unmodified and began offering their use to customers." Id. at 19.  Plaintiff argues that significant modification of the accused ATMs occurred when Defendants integrated a third-party software platform into them after receiving them from the manufacturer. Id. On this point, Plaintiff attempts to distinguish every customer suit exception case cited by Defendants, claiming that Defendants did not rely on any case involving similar action taken by the "customer." Id. at 19–20. And finally, Plaintiff argues that its case against Capital One is unique because the bank may have purchased non-licensed ATMs from a different manufacturer. See Case 2, Doc. 34 at 15. The Court disagrees with Plaintiff and **FINDS** that the "unique" claims and "major issues" identified by Plaintiff in the Virginia Actions do not rise to the level necessary to prevent application of the customer suit exception. See Spread Spectrum Screening LLC, 657 F.3d at 1358.

First, the issues of different damages calculations and the alleged "willfulness" of ABNB's infringement are not "major issues." Quite the contrary, these are precisely the type of issues that can be dealt with easier and more quickly after resolution of the manufacturer suit. For example, deferring to the Georgia Action on these issues will ensure that Plaintiff does not recover double damages in these parallel proceedings.

Next, the "unique" claim of Defendant's alleged implementation of third-party software is also not a "major issue" likely to be left unresolved in the Georgia Action. The issue's relative insignificance is clearly shown through the uncontroverted Declaration of Bonnie Talley. Case 1, Doc. 37 at Ex. 1. In her Declaration, Ms. Talley, the ABNB Operations Supervisor, states under penalty of perjury, "that the ATMs used by ABNB do not run any software other than NCR-provided software." Id. at Ex. 1 ¶ 7. Additionally, Ms. Talley declares that the installation of the ATMs is completed by "an NCR technician" and that the ATMs were "fully operational and ready for customer use" upon the technician's departure. Id. at Ex. 1 ¶ 6. A similar Declaration was issued regarding Capital One's handling of the ATMs. Case 2, Doc. 35, at Ex. 1 ¶ 11. These statements create an evidentiary conflict with the main thrust of Plaintiff's Opposition regarding third-party software and Defendants' alleged modification of the ATMs.

Finally, the claims to infringement of method patents can clearly be resolved through the Georgia Action. A co-defendant to the manufacturer in the Georgia Action, Sun Trust Bank, is a similarly situated party to Defendants. See Case 1, Doc. 38 at 10–11. Plaintiff has admitted in its briefing that it intends to bring the same method claims against Sun Trust Bank. Case 1, Doc. 37 at 5–6 n.5. Therefore, the Court **FINDS** that the method claims could be disposed of by a decision in the Georgia Action and that they are not "major issues."

Plaintiff's second argument that Defendants do not qualify as "customers" under the customer suit exception is challenged by Defendant's declarations. See id. at 19–21. Plaintiff asserts that a true "customer" is one who simply buys a product and puts it to use "unmodified." Id. at 19. Plaintiff's only argument in support of this position is that Defendants do not meet this standard because they implemented the ATMs into their existing banking system and in the process installed "third-party software in at least some of the" ATMs. Id. Plaintiff's argument is less persuasive as it is challenged by conflicting evidence outlined in the declarations offered by Defendants on this point. See, e.g., Case 1, Doc. 37 at Ex. 1.

Finally, Plaintiff's contention regarding a potential additional unlicensed supplier of ATMs is equally unpersuasive. Capital One clearly identifies that the additional supplier became licensed by NCR "as a result of previous litigation," Case 2, Doc. 35 at 3, and Plaintiff has provided no evidence or allegation to the contrary.

The remaining argument against allowing the Georgia Action to predominate is the significant delay that will likely be effectuated on the Virginia Actions. The average time to trial for a civil case is nearly twelve months longer in the Northern District of Georgia than it is in the Eastern District of Virginia. Case 1, Doc. 37 at 17–18. Assuming that timing was a strategic factor in Plaintiff's choice of forum, this difference highlights the sound reasoning at play in giving significant respect to that selection. In the end, however, current "[d]ocket conditions" are only a "minor consideration." GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 520 (E.D. Va. 1999). Accordingly, the Plaintiff's selection of this District, and its likely preference for a faster resolution, does not overcome the balance of other factors weighing in favor of permitting the Georgia Action to predominate.

Therefore, having considered all of the arguments and evidence thus far presented,[2] there is clear and convincing evidence that Defendants meet the definition of a "customer" for the purposes of the customer suit exception. Accordingly, the Court **FINDS** that the customer suit exception applies, and the suit against the manufacturer in the Georgia Action should predominate over the customer suits in Virginia despite their status as the first-filed actions.

Although it would be well within its discretionary power to stay the Virginia Actions,[3] this Court believes that "the guiding principles" of "efficiency and judicial economy" are best served by transfer. See Tegic Commc'ns Corp., 458 F.3d at 1343. "In a patent infringement action, as a general rule, 'the preferred forum is that which is the center of the accused activity . . . . [and t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" GTE Wireless, Inc., 71 F. Supp. 2d at 519 (quoting Santrade Ltd. v. Berndorf ICB Int'l Conveyor Belts, Inc., No. 6:92-2032-3, 1992 WL 470482, *2 (D.S.C.1992)). In GTE Wireless, Inc., the case was transferred to California because "the central issues concerning the accused activity revolve[d] around the cellular phones which [we]re designed and manufactured in San Diego." Id. Similarly, the litigation brought by Plaintiff revolves around ATMs which are designed and manufactured in the Northern District of Georgia. Case 1, Doc. 38 at 13. As a result, many of the most important factors, such as the convenience of witnesses, weigh heavily in favor of transfer. See id. at 16–19.

---

[2] The Court cautions that the facts recited here are expressed for the limited purpose of deciding the instant Motion. These recitations and conclusions are not factual findings upon which the parties may rely for any other issue in this, or any other proceeding.

[3] In fact, even Plaintiff agrees that an action pending against a bank should be stayed until resolution of the manufacturer suit. In the Georgia Action, Plaintiff has moved for the manufacturer suit to be transferred to this Court, while at the same time requesting that the case against co-defendant Sun Trust Bank be severed and stayed. In doing so, Plaintiff admits that a stay would benefit judicial economy because if the patent is found valid, the issues involving the banks "would be greatly narrowed" and if the patent is found invalid, "there will be nothing left . . . to handle." Capital Sec. Sys., Inc. v. NCR Corp et al., No. 1:14cv1516 (N.D. Ga.), Doc. 15, at 19–20. Regardless, now that the Virginia Actions are transferred to the Northern District of Georgia, it is within the sole and sound discretion of that Court to determine the most economical and efficient manner in which to proceed.

Furthermore, "[w]hen the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight." Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 716 (E.D. Va. 2005). Here, the Plaintiff's home forum is admittedly not the Eastern District of Virginia. Case 1, Doc. 37 at 25. Accordingly, although Plaintiff has pointed to a few potential witnesses that may live in this District, that claim is far outweighed by the fact that the "nucleus of operative facts" is located in the Northern District of Georgia. See Samsung Elecs. Co., 386 F. Supp. 2d at 716.

The interests of justice and judicial economy would also be well served by transfer. The major issues in all three cases significantly overlap, with the primary case being the manufacturer suit in Georgia. Consolidated under the roof of a single courthouse, the suits against the customer banks can be handled uniformly, and then quickly dealt with once the manufacturer suit is resolved. Transfer of the Virginia Actions minimizes the possibility of inconsistent judgments, not only between manufacturer and customer, but also between similarly situated customers ABNB, Capital One, and Sun Trust Bank. In fact, the parties have already come to a similar conclusion on their own, as the Virginia Defendants have agreed to be held to the results and findings of the manufacturer suit. See Case 1, Doc. 33 at Ex. 1 ¶ 8.

Lastly, in an effort to block transfer, Plaintiff argues that transfer is impermissible because ABNB is not subject to personal jurisdiction in Georgia. See Case 1, Doc. 37 at 21–24. Although, if true, this would be sufficient to prevent a transfer, the evidence presented does not support this assertion. The Georgia long arm statute allows for the "exercise of personal jurisdiction over any nonresident . . . if in person or through an agent, he or she: (1) Transacts any business within [Georgia; or] (2) Commits a tortious act or omission within [Georgia]." Ga. Code Ann. § 9-10-91. The "transacts any business" prong, is extremely broad, and "limited to

the extent permitted by due process." United States v. Billion Int'l Trading Inc., No. 1:11cv2753, 2012 WL 1156356, at *3 (N.D. Ga. Apr. 5, 2012) (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank, 620 S.E.2d 352, 355 (Ga. 2005)).  Furthermore, to satisfy this requirement, "a defendant need not physically enter the state."  Id. (quoting Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1264 (11th Cir. 2010).

The Due Process Clause limits personal jurisdiction to situations where a defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  "Such [minimum] contacts exist when a defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law.'"  Unspam Techs., Inc. v. Chernuk, 716 F.3d 322, 328 (4th Cir. 2013) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The parties each cite a different Georgia case applying similar, but not indistinguishable, facts to the personal jurisdiction analysis.  Plaintiff points to a products liability case where the district court found that a single purchase was insufficient to establish jurisdiction.  See Case 1, Doc. 37 at 23 (citing McCarthy v. Yamaha Motor Manuf. Corp., No. 3:12cv117, 2014 WL 457698 (N.D. Ga. Jan. 24, 2014)).  Defendants counter with a patent case where the district court found that the purchase of an infringing product within the state is sufficient to satisfy jurisdiction.  See Case 1, Doc. 38 at 13 (citing Fusionbrands, Inc. v. Suburban Bowery of Suffern, Inc., No. 1:12cv229, 2013 WL 5423106 (N.D. Ga. Sept 26, 2013)).

When applied to the context of the Virginia Actions, a patent infringement case involving the purchase of thirteen allegedly infringing ATMs  from a Georgia corporation, the Court sees the comparison to the facts of Fusionbrands, Inc. as more persuasive.  Furthermore, ABNB

continued to "transact business" and "purposefully avail itself of the privilege of conducting activities" in Georgia as it arranged with NCR for the installation of the newly purchased ATMs. See Unspam Techs., Inc., 716 F.3d at 328.   Accordingly, the Court **FINDS** the evidence presented sufficient to satisfy both the first and second prongs of the Georgia long arm statute as well as the Due Process Clause minimum contacts analysis. See Case 1, Doc. 33 at Ex. 1 ¶ 4.

Therefore, since the balance of factors weighs strongly in favor of a transfer, and because both cases "might have been brought" in Georgia, this Court **FINDS** that judicial economy and the interests of justice are best served by a transfer of the Virginia Actions to the Northern District of Georgia. See 28 U.S.C. § 1404(a).  The propriety of this decision is bolstered by the Court's firm conviction that in a patent infringement action, "[t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." See GTE Wireless, Inc., 71 F. Supp. 2d at 519.

## IV.   CONCLUSION

Based upon the foregoing reasons, Defendants' Motions to Stay or Transfer, Case 1, Doc. 32; Case 2, Doc. 32, are **GRANTED IN PART** and **DENIED IN PART**.  Defendants' requests for a stay are **DENIED**.  Defendants' requests for transfer are **GRANTED**, and these actions are **ORDERED TRANSFERRED** to the Northern District of Georgia.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: October 17, 2014